IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CRAIG RASHAAN LOMAX,           )
                               )
        Petitioner,            )
                               )
    v.                         )    No. 16 C 8478
                               )
MICHAEL MELVIN,                )
                               )
        Respondent.            )

**OPINION AND ORDER**

WILLIAM T. HART, UNITED STATES DISTRICT JUDGE

This case is before the court on Petitioner Craig Rashaan Lomax's (Lomax) *pro se* petition for writ of habeas corpus (Petition) brought pursuant to 28 U.S.C. § 2254 (Section 2254) and Respondent Michael Melvin's (Respondent) motion to lift stay and dismiss (Motion). For the reasons stated below, the Petition is denied and the Motion is granted.

**BACKGROUND**

Following a jury trial in the Circuit Court of Cook County, Illinois, Lomax was convicted of two counts of first-degree murder, two counts of aggravated kidnapping, three counts of armed robbery, and two counts of aggravated battery. *People v. Lomax*, 2011 IL App (1st) 092186-U, ¶ 1. Lomax was sentenced to two concurrent terms of natural life imprisonment for the murder convictions, a concurrent twenty-year sentence for one of the armed robbery convictions, and two five-year sentences for the aggravated battery convictions to run consecutively to the armed robbery sentence. *Lomax*, 2011 IL App (1st) 092186-U, ¶ 8. Lomax filed an appeal contending that the trial court had erred in denying Lomax's motion to suppress

his pre-trial statements to police, and the trial court's denial of Lomax's motion and its judgment were affirmed on July 22, 2011. *Lomax*, 2011 IL App (1st) 092186-U, ¶¶ 1, 21. Lomax then filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, which was denied November 30, 2011. *People v. Lomax*, 962 N.E.2d 486 (table) (Ill. 2011).

Lomax filed a post-conviction petition raising an alleged *Brady* violation on October 22, 2012 which was dismissed on December 11, 2012, and the dismissal was affirmed on December 12, 2014.[1] *People v. Lomax*, 2014 IL App (1st) 130477-U, ¶¶ 1, 4, 30. Lomax subsequently filed a PLA, which was denied March 25, 2015. *People v. Lomax*, 31 N.E.3d 771 (table) (Ill. 2015).

Lomax then filed a habeas petition in the Circuit Court of Cook County on July 24, 2015 which was dismissed August 25, 2015. Pet. pp. 144, 162. Lomax filed a motion for leave to file a late notice of appeal in the Illinois Appellate Court on January 12, 2016, which was denied January 22, 2016. Mot. Ex. I.

Lomax then filed a motion for leave to file a successive post-conviction petition on March 9, 2016 based on the alleged *Brady* violation. Mot. Ex. K.

On August 29, 2016, Lomax filed the present Petition. Pet. p. 1.

On September 28, 2016, the Illinois Supreme Court denied Lomax's PLA from the Appellate Court denial of Lomax's motion for leave to file a late notice of appeal (from the dismissal of Lomax's state habeas petition). Mot. Ex. J.

On October 7, 2016, this court stayed the proceedings regarding the Petition pending Lomax's ongoing state proceedings. Dkt. #7.

---

[1] Lomax alleged that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose that it had paid to relocate one of its witnesses. Pet. p. 145.

The Circuit Court of Cook County denied Lomax's motion for leave to file a successive post-conviction petition on September 22, 2017. Mot. Ex. L.

The Respondent moves to lift the stay and dismiss the Petition on the ground that it is untimely. *See* 28 U.S.C. § 2244(d).

**LEGAL STANDARD**

An individual in custody pursuant to state court judgment may seek a writ of habeas corpus pursuant to Section 2254, which provides the following:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The decision made by a state court is deemed to be contrary to clearly established federal law "'if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009)(quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). The decision by a state court is deemed to involve an unreasonable application of clearly established federal law "'if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but

unreasonably applies it to the facts of the particular case.'" *Emerson*, 575 F.3d at 684 (quoting *Bell*, 535 U.S. at 694).

**DISCUSSION**

This court has liberally construed Lomax's *pro se* filings. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017)(stating that a "trial court is obligated to liberally construe a *pro se* plaintiff's pleadings")(citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Kelley v. Zoeller*, 800 F.3d 318, 325 (7th Cir. 2015); *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 500 (7th Cir. 2014)); *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001)(indicating that a court should "liberally construe the pleadings of individuals who proceed *pro se*"). Lomax asserts in the Petition: that the State committed a *Brady* violation by failing to disclose that it had paid to relocate one of its witnesses (Claims 1 and 4), that Lomax's trial counsel was ineffective for failing to challenge Lomax's 72-hour detention before his preliminary hearing (Claim 2), and that the trial court should have suppressed Lomax's pre-trial statements (Claim 3).

I. Timeliness of Petition

Before reaching the merits of the Petition, the timeliness of the Petition must be addressed. *See Gray v. Zatecky*, 865 F.3d 909, 910 (7th Cir. 2017)(stating that in the situation where a petitioner-appellant sought a writ of habeas on several grounds, the Court must first assure themselves the petition was timely before reaching those arguments). Respondent argues that the Petition is untimely under 28 U.S.C. § 2244(d) (Section 2244(d)), that none of Lomax's state proceedings beginning after the one-year limitation period of Section 2244(d) expired

would have tolled said limitation period even if they had been brought earlier, and that there is no equitable basis for excusing Lomax's untimeliness. Lomax's appointed counsel responds that there is no basis to find the Petition meets the statute of limitations requirement of Section 2244(d) and that there is no basis for any of the equitable remedies to save Lomax's claims. Lomax has not responded to either the Motion or his appointed counsel's response, but he did include in the Petition a section about timeliness of the Petition.

A. Statutory Tolling

Under Section 2244(d)(1), "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1); *see Gray*, 865 F.3d at 912 (stating that the Antiterrorism and Effective Death Penalty Act of 1996 imposes a strict one-year time limit for requesting a writ of habeas corpus). The one-year limitation period starts running from the latest of "(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court ...; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1).

However, the one-year limitation period for filing a federal habeas petition may be tolled, as "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

In the present case, the one-year limitation period (Limitation Period) for filing the Petition started running on February 28, 2012, as that is the date on which the judgment became final by the expiration of the time for seeking direct review, and none of the other subsections of Section 2244(d)(1) are applicable or provide a later date.[2] *See* 28 U.S.C. § 2244(d)(1)(A). Regarding Section 2244(d)(1)(B), Lomax alleges the state court's erroneous denial of his "pro se PC" was an impediment to filing created by the State. Pet. p. 100-01. It is unclear what petition or motion Lomax is referring to, but presumably "PC" stands for post-conviction. A denial of a petition by a state court is simply not a state-created impediment to filing a separate, federal habeas petition. *See Moore v. Battaglia*, 476 F.3d 504, 506-07 (7th Cir. 2007)(stating that "[a]lthough neither Section 2244 nor this circuit has defined what constitutes an 'impediment' for purposes of Section 2244(d)(1)(B), the plain language of the statute makes clear that whatever constitutes an impediment must *prevent* a prisoner from filing his petition")(quoting *Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002)). Lomax alleges that the state court judge failed to liberally construe his pleadings, but that did not prevent Lomax from filing a federal habeas petition. Pet. p. 100-01. Additionally, if Lomax is referring to his first post-conviction petition, he did receive a tolling effect from filing that petition as will be explained below. If Lomax is referring to his motion for leave to file a successive post-conviction petition, that motion was filed after the Limitation Period expired and therefore is irrelevant, which also will be explained below. Regarding the remaining subsections of Section 2244(d)(1), no newly recognized right retroactively applicable has been alleged, and Lomax learned of a potential

---

[2] February 28, 2012 is ninety days after the Illinois Supreme Court denied Lomax's PLA on November 30, 2011. *See Anderson v. Litscher*, 281 F.3d 672, 674 (holding that the ninety day period after a direct appeal during which a petition for certiorari may be filed by a state prisoner falls within the meaning of Section 2244(d)(1)(A) for purposes of determining when the statute of limitations begins to run).

*Brady* violation claim prior to the Illinois Supreme Court's denial of his PLA. Pet. p. 164; *see* 28 U.S.C. § 2244(d)(1)(C-D).

The Limitation Period ran until October 22, 2012 when Lomax filed a post-conviction petition in state court. *See* 28 U.S.C. § 2244(d)(2). At this point, 236 days of the Limitation Period had passed before the Limitation Period was statutorily tolled by the filing of this post-conviction petition.

The Limitation Period resumed on March 25, 2015 when the Illinois Supreme Court denied Lomax's PLA regarding his post-conviction petition. The Limitation Period ran for an additional 120 days until July 24, 2015 when Lomax filed a habeas petition in state court, once again tolling the Limitation Period under Section 2244(d)(2). At this point, 356 days of the Limitation Period had passed.

The Limitation Period resumed either on August 25, 2015 when Lomax's state habeas petition was denied by the state trial court or thirty days later on September 24, 2015 when time ran out for Lomax to appeal. Respondent points out that it is an open question as to whether the limitation period remains tolled during the period in which a petitioner could have filed a timely notice of appeal but did not. *See Williams v. Buss*, 538 F.3d 683, 685 (7th Cir. 2008)(stating that the Court had previously reserved the question whether time provided for filing a petition or appeal to a higher court is treated as time during which an application is pending, if the time expires without a filing, and that the Court would again reserve further consideration of the intricacies of timing rules)(citing *Fernandez v. Sternes*, 227 F.3d 977, 980 (7th Cir. 2000)). The court agrees that the timing issue need not be resolved because the Petition was filed long after the Limitation Period expired no matter which date is used for calculation. In the scenario using the later date of September 24, 2015 as the date for the Limitation Period to resume, the

Limitation Period would have expired nine days later on October 3, 2015. However, factoring in that October 3, 2015 was a Saturday, the Limitation Period expired on October 5, 2015. Lomax did not file the Petition until August 29, 2016, over ten months late. Therefore, the Petition is untimely.

Lomax includes in the Petition in a paragraph regarding Section 2244(d)(2) that he did not know he could appeal the denial of his state habeas petition until December 30, 2015. Respondent argues that none of Lomax's remaining state court proceedings, including Lomax's motion for leave to file a late notice of appeal from the denial of his state habeas petition, impact the Limitation Period as they were all brought after the Limitation Period expired, and none of the proceedings would have tolled the Limitation Period had they been brought earlier.

State proceedings that do not begin until the federal limitation period has expired are irrelevant. *De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009). Lomax filed a petition of mandamus in state court on November 19, 2015, a motion for leave to file a late notice of appeal in state court on January 12, 2016, and a motion for leave to file a successive post-conviction petition on March 9, 2016. Because all of these state court proceedings were not started until after the Limitation Period expired, they are irrelevant. Regarding Lomax's argument that his mistake of law regarding the ability to appeal a state trial court denial of a state habeas petition implicates statutory tolling under Section 2244(d)(2), that is simply not the case. The statute clearly provides that the *application* for State post-conviction or other collateral review with respect to the pertinent judgment or claim must be *properly filed* to have a tolling effect, which a *motion for leave to file* a late notice of appeal after the one-year limitation period has expired is not. Any equitable implications of Lomax's mistake of law will be further addressed below. No additional analysis as to whether, had the state court proceedings been initiated within the

Limitation Period, they would have provided statutory tolling under Section 2244(d)(2) is required.

### B. Equitable Remedies

In addition to statutory tolling, equitable remedies may apply to provide a brief extension of time during which a late habeas filing will be accepted. *Gray*, 865 F.3d at 912 (explaining that the Supreme Court has held there is a narrow safety valve in the form of equitable tolling)(citing *Holland v. Florida*, 560 U.S. 631 (2010)); *see Williams v. Sims*, 390 F.3d 958, 962 (7th Cir. 2004)(stating that the common law tolling doctrines of equitable estoppel and equitable tolling are applicable to habeas statute of limitations provided the doctrines are not applied in a way that is inconsistent with the statute). Equitable estoppel addresses conduct by the State that prevented the petitioner from suing within the statutory period. *Williams*, 390 F.3d at 959; *see Socha v. Boughton*, 763 F.3d 674, 683 (7th Cir. 2014)(stating that "[e]quitable estoppel ... applies to a limitations period when a party takes active steps to prevent an adversary from suing on time")(citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990)).

While equitable estoppel addresses conduct by the State, equitable tolling refers to situations in which, through no fault of the State, the petitioner is unable to file within the statutory period. *Williams*, 390 F.3d at 960. The concept of equitable tolling is partially encompassed by Section 2244(d)(1)(D); however, neither Section 2244(d)(1)(D) nor the common law doctrine of equitable tolling encompass mistakes of law. *Williams*, 390 F.3d at 960-61, 963-64. For equitable tolling to apply, the petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Gray*, 865 F.3d at 912 (quoting *Holland*, 560 U.S. at 649)(internal quotation marks omitted); *see Socha*, 763 F.3d at 683 (stating that the petitioner bears the burden

of establishing both requirements).  Equitable tolling is a highly fact-dependant area.  *See Gray*, 865 F.3d at 913 (quoting *Socha*, 763 F.3d at 684).  Although "courts are expected to employ 'flexible standards on a case-by-case basis'… [equitable tolling] is 'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing.'"  *Socha*, 763 F.3d at 684 (citing *Holland*, 560 U.S. at 650-52; *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004)).

Further, there is an actual innocence gateway which provides an equitable exception to Section 2244(d)(1).  *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015)(citing *McQuiggin v. Perkins*, 569 U.S. 383 (2013)).  However, "[t]he Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence."  *Gladney*, 799 F.3d at 895 (citing *McQuiggin*, 569 U.S. at 392).  A petitioner must accompany his persuasive showing of actual innocence with a different claim for relief in order to use actual innocence "as a 'gateway' to excuse procedural defaults that would otherwise bar a federal court from reaching the merits of the underlying claims."  *Gladney*, 799 F.3d at 895 (citing *McQuiggin*, 569 U.S. at 392-93).  Even then, "[t]he actual innocence gateway is narrow."  *Gladney*, 799 F.3d at 896.  The petitioner must present evidence not previously considered, such evidence of innocence being "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *Gladney*, 799 F.3d at 896 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995))(internal quotation marks omitted).  The petitioner bears the burden of showing that in light of such evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Gladney*, 799 F.3d at 896 (citing *House v. Bell*, 547 U.S. 518, 537 (2006))(internal quotation marks omitted).

Lomax has included in the Petition statements that he had been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing.[3] Pet. p. 102. Lomax alleges that the state court's denial of his "pro se PC" was an impediment to filing the Petition. Pet. pp. 100-01. Lomax states that he did not know he could appeal the denial of his state habeas petition until he spoke with someone on December 30, 2015. Pet. p. 102. Lomax also states that he was sent to segregation on February 22, 2015 for two months and on June 4, 2015 and had difficulty accessing his legal materials during those times. Pet. pp. 102, 193. Lomax also alleges that evidence that the State paid to relocate one of its witnesses was not presented at trial, and that absent the relocated witness's handwritten statement, grand jury testimony, and trial testimony, there would have been a different outcome at trial and could have possibly substantiated Lomax's lack of accountability. Pet. pp. 56-58. Lomax alleges that he is actually innocent because his trial counsel was ineffective, as shown by the failure to challenge Lomax's alleged 72-hour detention without being brought before a judge. Pet. p. 60.

Respondent argues that even if Lomax's two stays in segregation hampered his ability to prepare his state and federal habeas petitions, Lomax was still able to file his state habeas petition on July 24, 2015, and at that time or any time in the following two months, he could have filed a protective petition in federal court and sought a stay of the federal proceedings until the state proceedings concluded. Respondent further states that when Lomax did file the Petition, he filed for a stay of the federal proceedings but failed to explain why he did not take this course of action a year earlier. Respondent argues that Lomax's failure to file a protective

---

[3] While this statement comes at the very end of Lomax's discussion of timeliness of the Petition, a discussion primarily directed to statutory tolling, because Lomax filed the Petition *pro se*, all statements included in the Petition about timeliness will be construed to implicate equitable tolling, if appropriate, as well.

11

petition when the opportunity was available demonstrates a lack of diligence in pursing his rights and undermines the notion that extraordinary circumstances outside his control caused the untimely filing. Respondent also argues that Lomax has come forward with no new evidence demonstrating that he is actually innocent. Respondent alleges that the only new evidence Lomax cites is the allegedly undisclosed relocation services that the State provided to one of its witnesses, but as the state appellate court concluded in rejecting Lomax's *Brady* claim based on that evidence, the evidence at trial conclusively demonstrated Lomax's guilt. Respondent also argues that the relocated witness's trial testimony was merely cumulative of other evidence presented at trial, and therefore it is not more likely than not that no reasonable juror would have convicted Lomax if the juror had known that the State had paid to relocate the witness.

Lomax's appointed counsel responds that the common law principles of both equitable tolling and equitable estoppel apply to this case. However, regarding equitable estoppel, Lomax's appointed counsel asserts that nothing in the record suggests that the State impeded the filing of the Petition. Regarding equitable tolling, Lomax's appointed counsel asserts that Lomax cannot meet either requirement that he was diligently pursuing his rights or that extraordinary circumstances stood in his way and prevented a timely filing. Lomax's appointed counsel also asserts that Lomax has not suggested any new evidence of actual innocence, only a potential *Brady* violation.

Looking at the facts, the common law equitable doctrines do not save the Petition from being untimely filed. Equitable estoppel is easily disposed of as nothing in the record suggests that the State prevented Lomax from filing the Petition within the Limitation Period. In fact, Lomax filed numerous motions, petitions, and appeals while in state custody.[4] Although Lomax

---

[4] While Lomax did not timely appeal the state court denial of his state habeas petition, this was not due to the fault of the State, but rather Lomax's mistake of law.

alleges that the state court erroneously denied his "pro se PC," as previously addressed, that did not prevent Lomax from filing the Petition in the context of Section 2244(d)(1)(B), nor can the denial be construed to have been conduct by the State that prevented Lomax from suing within the Limitation Period in the context of equitable estoppel.

Regarding equitable tolling, since mistakes of law are not excused, Lomax's contention that he did not know until December 2015 that he could appeal the denial of his state habeas petition has no bearing on the equitable tolling determination.[5] Lomax's circumstances when viewed as a whole do not rise to the level of extraordinary circumstances standing in his way and preventing timely filing. *Compare Gray*, 865 F.3d at 912-13 (finding that in the case of a petitioner who was indigent, proceeded *pro se* for a long time, did not have any particular legal experience, had limited access to prison legal resources, and experienced a long delay in obtaining files needed to prepare his petition, nothing in said petitioner's case compelled the Court to excuse the petitioner from the one-year period of limitation), *with Socha*, 763 F.3d at 678 (finding that in the case of a petitioner who faced unusual obstacles in filing his petition, repeatedly attempted to get his record in time to comply with the deadline, and relied on the district court's initial grant of a motion to extend the deadline to file his petition, equity required his failure to file a completed petition before the statutory deadline to be forgiven). Lomax includes in the Petition that he was without some of his legal materials during his two stays in segregation. It is unclear from the record when Lomax's June 4, 2015 stay in segregation ended, but given that Lomax was able to file his state habeas petition in July 2015 and given that under

---

[5] It is unclear whether Lomax's mistake of law regarding his ability to appeal the denial of his state habeas petition is being asserted as evidence that he was diligently pursuing his rights or that an extraordinary circumstance stood in his way. However, because the general rule that reasonable mistakes of law are not a basis for equitable tolling is applicable to *pro se* habeas petitioners, this assertion by Lomax cannot be used to satisfy either requirement of equitable tolling. *See Williams*, 390 F.3d at 963.

13

one scenario calculating the Limitation Period, the Limitation Period did not expire until October 5, 2015, that would have left Lomax with a non-negligible amount of time to file the Petition. Additionally, Lomax is proceeding *pro se*, although that alone is not an extraordinary circumstance. *See Gray*, 865 F.3d at 912-13 (finding that most habeas petitioners are indigent, proceed *pro se* for a long time, and lack any particular legal experience, which by definition makes those circumstances not extraordinary). Lomax's two stays in segregation combined with his *pro se* status simply do not rise to the level of extraordinary circumstances, and therefore Lomax fails to meet his burden regarding equitable tolling.

Turning to actual innocence, Lomax's statements regarding his innocence do not satisfy his burden of showing that in light of evidence not previously considered, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. Indeed, Lomax even states that had the evidence that the State paid to relocate one of its witnesses been presented at trial, it "could have possibly substantiated" Lomax's lack of accountability. Pet. p. 58. "Could have possibly" falls short of "more likely than not." Additionally, the state appellate court considered Lomax's *Brady* claim but concluded that in light of Lomax's statements made to police, which the court found to be admissible on direct appeal, and all of the other witness testimony presented at trial, the testimony of the relocated witness was not of such conclusive character that its removal as a violation of *Brady* would probably change the result upon retrial. *Lomax*, 2014 IL App (1st) 130477-U, ¶ 26. Therefore, Lomax fails to meet his burden regarding this evidence.

Additionally, Lomax fails to meet his burden regarding his assertion that he is actually innocent because his trial counsel was ineffective, as shown by his trial counsel's alleged failure to challenge Lomax's 72-hour detention. Pet. p. 60. Lomax appears to be arguing that had his

14

72-hour detention been challenged in the manner he details, the challenge would have been successful and statements he made during that detention would have been suppressed, which ultimately would have presented a probability that the outcome of the trial would have been different. Pet. pp. 69-70, 77. Presumably then, the new evidence in terms of the actual innocence gateway would be regarding Lomax's 72-hour detention. However, Lomax's trial counsel did file a pre-trial motion to suppress Lomax's statements, including a contention that Lomax's 72-hour detention was excessive and coercive and that any statement made during that time was in violation of his constitutional rights. *Lomax*, 2011 IL App (1st) 092186-U, ¶¶ 2. The statements were found to be admissible after a hearing held by the trial court, and the trial court's denial of Lomax's motion to suppress was affirmed on direct appeal. *Lomax*, 2014 IL App (1st) 130477-U, ¶ 26; *Lomax*, 2011 IL App (1st) 092186-U, ¶¶ 1, 3, 7, 21. Therefore, although Lomax asserts that his trial counsel failed to challenge Lomax's 72-hour detention, implicating potential evidence of the 72-hour detention not presented at trial, it appears that Lomax actually disagrees over arguments made in the pre-trial motion to suppress which included evidence of the 72-hour detention.[6] It cannot be that *legal arguments* allegedly not presented at trial constitute *evidence* not previously considered. *See Schlup*, 513 U.S. at 324 (describing new reliable evidence as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial). Additionally, Lomax has failed to show how evidence of his 72-hour detention allegedly not presented at trial would have made it more likely than not that no reasonable juror would have found Lomax guilty beyond a

---

[6] For example, Lomax states that it is perplexing that his trial counsel allegedly did not cite two specific cases in his motion to suppress, and alleges that at least one of those cases would have been successful in obtaining a different outcome. Pet. pp. 69-70.

15

reasonable doubt, as Lomax's statements made during his 72-hour detention were ultimately admissible at trial.

Overall, Lomax's statements regarding his alleged actual innocence fail to meet his burden, and thus the narrow actual innocence gateway cannot save Lomax's untimely Petition.

II. Claims 1-4

The merits of Lomax's claims in the Petition need not be reached as the issue of the timeliness of the Petition is dispositive.

III. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." *Id.* A district court should only issue a certificate of appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must also show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

In this case, Lomax has not shown that reasonable jurists could debate whether the Petition should have been found timely or that the issues presented deserve encouragement to proceed further. Therefore, should Lomax decide to appeal this court's ruling, this court finds that a certificate of appealability would not be warranted, and is denied.

IV. Appeal

Lomax is reminded that he has thirty days from the entry of this order to file a notice of appeal with the Clerk of Court:

>Clerk's Office, U.S. District Court
>219 South Dearborn Street
>Chicago, IL 60604

Lomax's appointed counsel is instructed to assist Lomax with the preparation of a notice of appeal and preparation of a request to the Court of Appeals for a certificate of appealability under Federal Rule of Appellate Procedure 22 should Lomax decide to appeal this court's ruling. Any motion by Lomax's appointed counsel to withdraw should be filed with the Seventh Circuit. *See U.S. v. Flowers*, 789 F.2d 569, 571 (7th Cir. 1986) (holding that in habeas cases, according to the Seventh Circuit's plan implementing the Criminal Justice Act, "court-appointed counsel must represent their clients on appeal unless [the Seventh Circuit] grant[s] a motion to withdraw," and that "once judgment has been entered in the district court any motion to withdraw by counsel must be filed in [the Seventh Circuit].").

IT IS THEREFORE ORDERED that the Petition [1] is denied and the Motion [20] is granted.

_____
William T. Hart
United States District Court Judge

Dated: June 7, 2018